Katherine E. Anderson (030051)
katey@katherineandersonlaw.com
KATHERINE ANDERSON LAW PLLC
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: 602.459.4112

*Attorneys for WCCM Group, LLC*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: WCCM Group, LLC, | Chapter 11 |
| Debtor, | CASE NO. 2:24-BK-05598-BKM |
| | **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED DECEMBER 10, 2024** |

WCCM Group, LLC ("Debtor"), the debtor in possession in the above captioned case, by and through counsel undersigned, hereby submits its First Amended Plan of Reorganization under Subchapter V Plan dated December 10, 2024 (the "Plan") pursuant to 11 U.S.C § 1190 *et seq*.

**NO SOLICITATION MATERIALS OTHER THAN THIS PLAN AND RELATED MATERIALS TRANSMITTED HEREWITH HAVE BEEN APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY CODE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

# Table of Contents

**I.   INTRODUCTION** ........................................................................................................ **4**

**A.   DESCRIPTION AND HISTORY OF DEBTOR** ....................................................... **4**

**II.   DEFINITIONS.** .......................................................................................................... **5**

**SCOPE OF DEFINITIONS.** ................................................................................................ **5**

**III.   CLASSIFICATION AND TREATMENT OF CLAIMS.** ......................................... **10**

**A.   CLASS 1 ADMINISTRATIVE EXPENSES AND FEES (UNIMPAIRED)** ............ **10**
**B.   B. CLASS 2 SECURED CLAIMS.** ......................................................................... **11**
1.   ARIZONA SECURED CLAIM (IMPAIRED) ................................................................ 11
2.   NEVADA SECURED CLAIM (IMPAIRED) ................................................................ 13
3.   COURTYARDS AT MADISON RANCH HOA (CLAIM NO. 6) (IMPAIRED) ................ 13
4.   COBBLESTONE AT SOUTH MOUNTAIN (IMPAIRED) ........................................... 13
5.   COPPER CREEK HOA (CARTER ROAD) .............................................................. 14
6.   SUMMIT AT SOUTH MOUNTAIN COMMUNITY ASSOCIATION (MILADA) ............ 14
7.   BANK OF AMERICA, N.A. (CLAIM FILED - #___) (UNIMPAIRED) ........................ 14
8.   BMW FINANCIAL SERVICES (CLAIM FILED - #6) (UNIMPAIRED) ..................... 15
**C.   CLASS 3 PRIORITY TAX CLAIMS** .................................................................... **15**
1.   ARIZONA DEPARTMENT OF REVENUE (CLAIM NOS. 11 AND 12)(IMPAIRED) ....... 15
**D.   CLASS 4 ALLOWED UNSECURED CLAIMS (IMPAIRED)** ............................... **15**

**IV.   TREATMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS** .... **16**

**V.   ACCEPTANCE OR REJECTION** ......................................................................... **17**

**VI.   MEANS OF EFFECTUATING THE PLAN** ......................................................... **17**

**A.   FUNDING THE PLAN/DISBURSING AGENT** ................................................... **17**
**B.   LIQUIDATION ANALYSIS** ................................................................................ **17**

**VII.   TREATMENT OF MISCELLANEOUS ITEMS** ................................................. **18**

**A.   RETENTION OF JURISDICTION** ...................................................................... **18**
**B.   CONTESTED CLAIMS** ....................................................................................... **19**
**C.   NOTICES UNDER THE PLAN** .......................................................................... **19**

**VIII.   EFFECT OF CONFIRMATION OF PLAN** ....................................................... **20**

**A.   DISCHARGE** ...................................................................................................... **20**
**B.   REVESTING** ....................................................................................................... **20**
**C.   TERMINATION OF SUBCHAPTER V TRUSTEE SERVICE** .............................. **21**

| | | |
|---|---|---|
| D. | MODIFICATION OF THE PLAN | 21 |
| E. | DEFAULT IN PLAN PAYMENTS | 21 |
| F. | POST-CONFIRMATION CONVERSION OR DISMISSAL | 22 |
| G. | CLOSING OF THE BANKRUPTCY CASE | 22 |
| H. | GOVERNING LAW | 23 |

3

# I.    INTRODUCTION

WCCM Group, LLC ("Debtor") is the debtor in the above-captioned Chapter 11 bankruptcy case.  Debtor files this Plan to account for the 2020 Chevrolet Truck.

On July 11, 2024 ("Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy case under the U.S. Bankruptcy Code.  This document is the Chapter 11 Plan of Reorganization proposed by the Debtor. The Debtor seeks to accomplish payments under the Plan by making regular monthly payments from rental income generated by the Debtor's properties and by selling certain of the Debtor's properties through the Plan. The Effective Date of the proposed Plan is the day on which the Confirmation Order becomes a Final Order.

As required by the Bankruptcy Code, the Plan classifies Claims in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims is impaired or unimpaired.  The Plan further provides the treatment each Class will receive under the Plan.

The following exhibits are attached to this Plan:

**Exhibit 1. Plan Projections**

**Exhibit 2. Liquidation Analysis**

## A.    Description and History of Debtor

The Debtor was formed in 2020 to own and operate properties as short term vacation rentals through the Airbnb platform. Debtor owns one property in Nevada and four properties in Arizona.  Three of the Arizona properties are operated as Airbnb's and rented on a per room, short term basis. The fourth Arizona property is a long-term rental. The Las Vegas, Nevada property was originally operated as an Airbnb, however, a change in Las Vegas regulations related to short term rental properties required Debtor to rent the Las Vegas property on a long-term basis. During the transition from a short-term rental to a long-term rental, the Las Vegas property was vacant for some time and Debtor's income was significantly reduced. Debtor was ultimately able to lease the Las Vegas property, however the combined effects of the significant decline in rental income

and the period with no income caused the Debtor to fall behind on secured debt payments, necessitating this Chapter 11 case.

The Debtor seeks to utilize the Subchapter V provisions of the Bankruptcy Code to restructure its debt obligations and pay all claims in full over time. Pursuant to this Plan of Reorganization, the Debtor will make plan payments from the rental income generated by the Debtor's properties and will sell certain properties to pay all claims in full.

Because this Plan contains: (a) a brief history of the Debtor's business operations; (b) a liquidation analysis; (c) projections with respect to the ability of the Debtor to make payments under the proposed Plan of Reorganization; and (d) the Bankruptcy does not require a separate Disclosure Statement to be filed in Subchapter V cases, a Disclosure Statement does not accompany this Plan of Reorganization. This Plan of Reorganization provides adequate information for interested parties to make an informed decision on whether to accept or reject the Debtor's Plan.

ALL CREDITORS ARE ENCOURAGED TO READ THE PLAN OF REORGANZATION BEFORE ACCEPTING OR REJECTING THE DEBTOR'S PLAN. THE PLAN INCLUDES INFORMATION REGARDING THE DEBTOR, IT'S HISTORY, LIQUIDATION ANALYSIS AND FINANCIAL ANALYSIS. CREDITORS ARE FURTHER ENCOURAGED TO READ THIS PLAN AND ALL ACCOMPANYING SOLICITATION MATERIALS IN THEIR ENTIRETY BEFORE DECIDING TO ACCEPT OR REJECT THE DEBTOR'S PLAN.

## II. **DEFINITIONS.**

**Scope of Definitions.** For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

5

1.     **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Bankruptcy Code § 503, including, without limitation, any actual and necessary expenses of preserving Debtor's estate, any actual and necessary expense of operating Debtor's business, any indebtedness or obligation incurred or assumed by Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and Confirmation of this Plan.

2.     **Allowed** when used as an adjective preceding the word "Claims" shall mean any Claim against Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim against such Debtor, or if no proof of claim is filed that has been or hereafter is listed by Debtor as liquidated in amount and not disputed or contingent, and in either case, a Claim as to which no objection to the allowance of which has been submitted within the applicable time period fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been submitted and such Claim has been Allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim from and after the Petition Date.

3.     **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

4.     **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of Arizona having jurisdiction over the Chapter 11 Case, and to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

6

**5.** **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. § 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

**6.** **Claim** shall mean any right to payment from Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, as such term is defined under Bankruptcy Code § 101(5).

**7.** **Class** shall mean a grouping of substantially similar Claims for common treatment thereof pursuant to the terms of this Plan.

**8.** **Confirmation** shall mean the entry of an Order by this Bankruptcy Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

**9.** **Creditor** shall mean any Person that has a Claim against Debtor that arose on or before the Petition Date or a Claim against Debtor's estate of any kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i). This includes all persons, corporations, partnerships, or business entities holding Claims against the Debtor.

**10.** **Debt** means, refers to, and shall have the same meaning as defined under Bankruptcy Code § 101(12).

**11.** **Disbursing Agent** shall mean the person or entity appointed by and subject to Bankruptcy Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims pursuant to the provisions of the Plan and Confirmation Order.

**12.** **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

**13.** **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court, which not having been

7

reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

14. **Impaired** when used as an adjective preceding the words "Class of Claims," shall mean that the Plan alters the legal, equitable, or contractual rights of a member of that Class.

15. **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

16. **Petition Date** shall mean the date on which Debtor, or petitioning Creditors, filed the petition for relief commencing this Chapter 11 bankruptcy case.

17. **Plan** shall mean this Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

18. **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Bankruptcy Code §§ 507(a), except Claims arising under Bankruptcy Code § 507(a)(8), but only to the extent it is entitled to priority in payment under any such subsection.

19. **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Bankruptcy Code § 507(a)(8), but only to the extent it is entitled to priority under such subsection.

20. **Proceedings** shall mean this Chapter 11 case.

21. **Professional Person** means and refers to attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Bankruptcy Court entered under Bankruptcy Code §§ 327, 328, 330, and/or 503(b).

22. **Reorganized Debtor** means Debtor after Confirmation of the Plan.

23. **Secured Claim** means and refers to a Claim that is secured by a valid lien, security interest, or other interest in property in which Debtor has an interest, which has been properly perfected as required by applicable law, but only to the extent of the value

of Debtor's interest in such property, determined in accordance with Bankruptcy Code § 506(a).

24.     **Subchapter V Trustee** means the trustee appointed by the United States Trustee pursuant to Bankruptcy Code § 586(b).

25.     **Unsecured Claim** shall mean a Claim against Debtor arising prior to the Petition Date and is not: (a) a Secured Claim under Bankruptcy Code § 506; or (b) a Claim entitled to priority under Bankruptcy Code §§ 503 or 507. "Unsecured Claim" shall include all Claims against Debtor that are not expressly otherwise dealt with under the Plan.

26.     **Arizona Properties** refers to and means the 19th Street Property, the Minton Property, the Milada Property and the Carter Property, collectively.

27.     **Arizona Secured Claim** refers to and means the Claim evidenced by Proof of Claim Number 7 held by U.S. Bank Trust Company, National Association, not in its individual capacity but solely as Trustee on behalf of PRP 2022-INV1 Trust and serviced by BSI Financial Services and secured by the Milada Property, the Minton Property, the Carter Property and the 19th Street Property.

28.     **Arizona Secured Claimant** refers to and means the holder of the Arizona Secured Claim.

29.     **19th Street Property** shall mean the real property located at 7437 S. 19th Street in Phoenix, Arizona.

30.     **Carter Property** shall mean the real property located at 2329 W. Carter Road in Phoenix, Arizona.

31.     **Milada Property** shall mean the real property located at 218 E. Milada Drive in Phoenix. Arizona.

32.     **Minton Property** shall mean the real property located at 1728 W. Minton Street in Phoenix, Arizona.

33.     **Nevada Property** shall mean the real property located at 7345 W. Wigwam Avenue in Las Vegas, Nevada.

9

34. **Nevada Secured Claim** refers to and means the Claim evidenced by Proof of Claim Number 8 held by U.S. Bank Trust Company, National Association, not in its individual capacity but solely as Trustee on behalf of PRP 2022-INV1 Trust and serviced by BSI Financial Services and secured by the Wigwam Property.

35. **Nevada Secured Claimant** refers to and means the holder of the Nevada Secured Claim.

36. **Other Definitions.** A term used and not defined herein, but which is defined under the Bankruptcy Code shall have the meaning set forth under the Bankruptcy Code. The words "herein", "hereof", "hereto, "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Some terms defined herein are defined in the section in which they are used.

## III. CLASSIFICATION AND TREATMENT OF CLAIMS.

### A. Class 1 Administrative Expenses and Fees (Unimpaired)

Pursuant to Bankruptcy Code § 1129(a)(9) and § 1191(a) all Administrative Expenses shall be paid on the Effective Date of the Plan. The Bankruptcy Court must approve all professional compensation and expenses. Each Professional Person requesting compensation in the case pursuant to Bankruptcy Code §§ 327, 328, 330, 331, 503(b) and/or 1103 shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Confirmation Date. Nothing herein shall prohibit each Professional Person from requesting interim compensation during the course of this case before Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute. This Class is not Impaired.

The Debtor has employed Katherine Anderson Law PLLC ("KAL") as Counsel for the Debtor-in-Possession. KAL has not yet filed any applications for fees and reimbursement of expenses. To date, KAL has received a total of $8,005.00 deposited to its IOLTA Trust Account from Warren Maxey, principal of the Debtor and no amount

has been offset. The Debtor is responsible to KAL for ongoing fees and costs. Counsel will submit applications for compensation in accordance with the Bankruptcy Code. Debtor anticipates that KAL's claim for services will not exceed $20,000.

Pursuant to Bankruptcy Code § 1183, Michael W. Carmel ("**Trustee**") was appointed as the Subchapter V Trustee in this case. Trustee has not yet submitted any applications for approval of fees and expenses. The Debtor anticipates that Trustee's claim for additional services will not exceed $15,000.

Trustee will submit a final application for any compensation in accordance with this Section for any award and payment of fees and expenses. Any of Trustee's approved fees and expenses shall be paid in full on the Effective Date of the Plan.

### B.  **B. Class 2 Secured Claims**

This Class contains secured claims secured by liens on property of the estate. The following represents all Classes containing pre-petition secured claims and their treatment under this Plan:

1.  Arizona Secured Claim (Impaired)

The Arizona Secured Claimant holds a first position consensual lien secured by the Arizona Properties. The Claim is evidenced by a Promissory Note and Deed of Trust in the principal amount of $1,147,500.00. The Arizona Secured Claimant filed Proof of Claim Number 7 and asserts a claim in the amount of $1,123,062.09. Debtor is evaluating the calculation of the Arizona Secured Claim and may filed a claim objection to address the propriety of certain accrued fees and interest reflected on the Arizona Secured Claim.

The Arizona Secured Claim shall accrue interest at the rate of 5.0% per annum and shall be paid in full no later than five years from the Effective Date. Beginning on the Effective Date and continuing until the Arizona Secured Claim is paid in full, Debtor will make monthly payments to the Arizona Secured Claimant in the amount of $4,500.00 per month on the first business day of each month. Until the Arizona Secured Claim is paid in full, Debtor shall have the right to sell any of the Arizona Properties, without penalty or additional charge of any kind, for a release price of $325,000.00 per property (the

"Release Price"). Debtor shall provide notice of any anticipated sale to the Arizona Secured Claimant at least fifteen (15) days in advance of the closing of any sale. Upon receipt of the Release Price, the Arizona Secured Claimant shall acknowledge receipt of the Release Price by recording a partial release and reconveyance of the Deed of Trust, as required by A.R.S. § 33-707(A). Should the Arizona Secured Claimant fail to record the partial release, the title insurer is authorized to rely on the Confirmation Order and record the satisfaction in accordance with A.R.S. § 33-707(E).

As set forth in the Plan Projections attached hereto, Debtor intends to sell the 19th Street Property, the Minton Property and the Milada Property before the end of 2025. Debtor projects an exposure period of sixty (60) to ninety (90) days for each of these properties. Within ninety (90) days of the sale of the third Arizona Property secured by the Arizona Deed of Trust, Debtor shall refinance and pay in full any outstanding amount due on the Arizona Secured Claim. Debtor may pay the Arizona Secured Claim in full at any time without penalty.

In the event of Debtor's default, the Arizona Secured Claimant is entitled to exercise any, and all, rights it may have under State law and shall be entitled to collect all amounts outstanding on its Claim.

Debtor's failure to comply with any of the terms of this confirmed Plan shall constitute an event of default pursuant to the terms of the underlying loan documents.

The terms and conditions, including all covenants contained in the loan documents executed by the Debtor in favor of the Arizona Secured Claimant (inclusive the "Arizona Loan Documents"), shall remain in full force and effect, unless directly modified herein, in which case the terms herein shall apply. In addition, to any default provisions contained herein, a default under the terms of the Arizona Loan Documents shall constitute an event of default under the Debtor's Plan.

The Arizona Secured Claimant shall continue or resume sending regular monthly statements to Debtor.

### 2. Nevada Secured Claim (Impaired)

On the Effective Date, the Debtor shall pay $5,004.38 to the Nevada Secured Claimant and the Nevada Secured Claim shall be fully reinstated. Debtor shall make regularly monthly payments thereafter as set forth in the loan documents executed by the Debtor in favor of the Nevada Secured Claimant (inclusive the "Nevada Loan Documents"). Debtor may pay the Nevada Secured Claim in full at any time without penalty. Debtor's failure to comply with any of the terms of this confirmed Plan shall constitute an event of default pursuant to the terms of the Nevada Loan Documents. In the event of Debtor's default, the Nevada Secured Claimant is entitled to exercise any, and all, rights it may have under State law and shall be entitled to collect all amounts outstanding on its Claim.

The terms and conditions, including all covenants contained in the Nevada Loan Documents, shall remain in full force and effect, unless directly modified herein, in which case the terms herein shall apply. In addition, to any default provisions contained herein, a default under the terms of the Nevada Loan Documents shall constitute an event of default under the Debtor's Plan.

The Nevada Secured Claimant shall continue or resume sending regular monthly statements to Debtor.

### 3. Courtyards at Madison Ranch HOA (Claim No. 6) (Impaired)

Courtyards at Madison Ranch HOA is the homeowner's association related to the Minton Property. Claimant filed a claim reflecting a secured claim in the amount of $5,448.00 and a total claim of $5,473.00. Claimant will receive monthly payments of $91.22 and will be paid the full amount of the remaining claim from the sale of the Minton Property. Debtor may pay the full amount of the Claim at any time without penalty. Debtor is current on post-petition payments to the HOA. The HOA shall continue or resume sending regular statements to Debtor.

### 4. Cobblestone at South Mountain (Impaired)

Cobblestone at South Mountain is the homeowner's association related to the 19th

Street Property. On the Petition Date Claimant was owed approximately $1,436.79. Claimant will receive monthly payments of $23.95 and will be paid the full amount of the remaining claim from the sale of the 19th Street Property. Debtor may pay the full amount of the Claim at any time without penalty. Debtor is current on post-petition payments to the HOA. The HOA shall continue or resume sending regular statements to Debtor.

### 5. Copper Creek HOA (Carter Road)

Copper Creek is the homeowner's association related to the Carter Road Property. On the Petition Date Claimant was owed approximately $1,527.00. Claimant will receive monthly payments of $25.45 over sixty months until paid in full. Debtor may pay the full amount of the Claim at any time without penalty. Debtor is current on post-petition payments to the HOA. The HOA shall continue or resume sending regular statements to Debtor.

### 6. Summit at South Mountain Community Association (Milada)

Summit at South Mountain Community Association is the is the homeowner's association related to the Milada Property. On the Petition Date Claimant was owed approximately $865.00. Claimant will receive monthly payments of $14.42 and will be paid the full amount of the remaining claim from the sale of the Milada Property. Debtor may pay the full amount of the Claim at any time without penalty. Debtor is current on post-petition payments to the HOA. The HOA shall continue or resume sending regular statements to Debtor.

### 7. Bank of America, N.A. (Claim No. 1) (Unimpaired)

Bank of America, N.A. ("Bank of America") holds a consensual lien on the Debtor's 2020 Chevrolet Silverado 1500 (the "Chevrolet Truck"). The Chevrolet Truck is used exclusively by Emmy Montes, a party related to the Debtor. Ms. Montes maintains insurance on the Chevrolet Truck and has and will continue to make all payments related to the Chevrolet Truck. Payments to Bank of America were current on the Petition Date and have remained current since the Petition Date. Debtor shall continue making regular monthly payments to Bank of America until the claim is paid in full. Bank of America

14

shall continue or resume sending regular statements to Debtor. Bank of America's legal, equitable, and contractual rights remain unchanged with respect to the above collateral. Bank of America shall retain its interest in the collateral pursuant to the original note.

8.    BMW Financial Services (Claim No. 6) (Impaired)

BMW Financial Services ("BMW") holds a consensual lien on the Debtor's 2022 BMW 3 Series 330i Sedan. BMW will receive a one-time cure payment of $379.52 on the Effective Date and the Debtor shall resume making regular monthly payments on the vehicle. BMW shall continue or resume sending regular statements to Debtor. BMW's legal, equitable, and contractual rights remain unchanged with respect to the above collateral. BMW shall retain its interest in the collateral pursuant to the original note.

C.    **Class 3 Priority Tax Claims**

This Class contains priority tax claims under § 507(a)(8). Any priority tax claim will receive interest at the statutory rate.

1.    Arizona Department of Revenue (Claim Nos. 11 and 12)(Impaired)

As provided by 11 U.S.C. § 1129(a)(9)(C), Arizona Department of Revenue ("ADOR") will be paid the full amount of its claim in sixty (60) months with interest at the statutory rate. Debtor may pay the claims in full at any time and avoid accruing interest.

D.    **Class 4 Allowed Unsecured Claims (Impaired)**

Allowed Unsecured Claims are not entitled to priority under Bankruptcy Code § 507(a). These Claims shall be paid in full in three equal payments from the sale of the Milada Property, the Minton Property and the 19th Street Property. Payments to Class 4 Claimants will begin no later than fifteen days after the closing of the sale of the first of the Arizona Properties according to the following schedule:

| Creditor | Claim No. | Claim Amt (if POC filed) or Scheduled Amt | % of Total Claims | Total Pymts | Payment |
|----------|-----------|------------------------------------------|-------------------|-------------|---------|
| JPMorgan Chase Bank | 2 | $1,397.39 | 4.128% | $1,397.39 | $465.80 |
| JPMorgan Chase Bank | 3 | $12,455.13 | 36.796% | $12,455.13 | $4,151.71 |
| U.S. Bank dba Elan Fin Svcs | 5 | $3,477.35 | 10.273% | $3,477.35 | $1,159.12 |
| U.S. Bank NA | 9 | $2,963.51 | 8.755% | $2,963.51 | $987.84 |
| U.S. Bank NA | 10 | $9,615.48 | 28.407% | $9,615.48 | $3,205.16 |
| First Financial Northwest Bank | | $3,940.01 | 11.640% | $3,940.01 | $1,313.34 |
| **TOTAL:** | | **$33,848.87** | **100%** | **$33,848.87** | **$11,282.96** |

## IV. <u>TREATMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS</u>

All executory contracts and leases existing on the filing date of the Chapter 11 Petition and unexpired on the Effective Date, that were not specifically rejected, between the Debtor and any individual or entity, whether written or oral, will be assumed pursuant to § 365 of the Bankruptcy Code as of the Confirmation Date. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and leases, and to cure defaults of the type that must be cured, if any, pursuant to the provisions of the Bankruptcy Code.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance or performance, you must file and serve your objection to the Plan of Reorganization within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

Executory contracts and unexpired leases entered into, and other obligations incurred, after the Petition Date by the Debtor, shall be performed by the Debtor in the ordinary course of business.

Case 2:24-bk-05598-BKM    Doc 41    Filed 12/10/24    Entered 12/10/24 16:56:45    Desc
Main Document    Page 16 of 37

## V. ACCEPTANCE OR REJECTION

Debtor seeks confirmation of the Plan pursuant to Bankruptcy Code § 1191(a). In the event that any Impaired Class of Creditors shall fail to accept the Plan in accordance with Bankruptcy Code § 1191(a), the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code § 1191(b).

## VI. MEANS OF EFFECTUATING THE PLAN

### A. Funding the Plan/Disbursing Agent

Debtor will contribute its future rental income along with the proceeds of the sales of one or more parcels of real property to fund the Plan. The Debtor will implement certain changes to its business to effectuate the terms of this Plan. On or before the Effective Date, the Debtor intends to convert the Carter Property from a short-term rental property to a long-term rental property. This change will increase rent for the Carter Property from $2,200.00 per month to $2,300.00 per month and will provide an accompanying reduction in expenses from $880.00 to $225.00. At this time, the Carter Property generates $1,320 in net rental income, which the Debtor expects will increase to $2,075 in net rental income. After the Effective Date, Debtor plans to list the 19th Street Property, the Minton Property and the Milada Property for sale and expects that these properties will sell after a 90-to-180-day exposure period.

If the Plan is confirmed pursuant to Bankruptcy Code § 1191(a), Debtor shall serve as the Disbursing Agent without compensation and without posting a bond. If the Plan is confirmed pursuant to Bankruptcy Code § 1191(b), under Bankruptcy Code § 1194(b) the Subchapter V Trustee shall accept monthly payments from the Debtor and act as the Disbursing Agent, making payments to Creditors until conclusion of the Plan.

### B. Liquidation Analysis

Attached hereto as Exhibit 2 is the Debtor's liquidation analysis. Pursuant to 11 U.S.C. § 1129(a)(7), the Plan must provide that any creditor not accepting the Plan will receive at least as much under the Plan as they would receive in a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code. Any liquidation would be undertaken

in future circumstances and cannot be easily predicted, however, given the Debtor's payment in full of all claims under the Plan, the same treatment that would be received in a Chapter 7. Because claims will be paid in full sooner than in a Chapter 7, the treatment contemplated herein is preferable to the treatment under Chapter 7.

Exhibit 2 (attached hereto and incorporated herein) is a Liquidation Analysis indicating what the Debtor believes Creditors would receive in the event of a liquidation which is payment in full. The figures for "liquidation value" in Exhibit 2 are the Debtor's best estimate on what these assets are worth on a market or a liquidation basis. In determining a liquidation value, the Debtor assumes a 10% discount for sale costs and commissions to sell real and personal property.

Creditors should note that on a liquidation basis, the full market value of assets is unlikely to be obtained. Further, there are costs associated with the liquidation of assets that must be paid out of any sale proceeds and such costs are difficult to estimate. Furthermore, the liquidation analysis does not include potential tax liability associated with any liquidation. All these costs would lessen the recovery to creditors. The result of a partial liquidation as contemplated by this Plan is more efficient and less costly than a Chapter 7 liquidation. Based on this analysis, the Debtor believes the Plan provides a better return for creditors than they would receive in liquidation.

## VII.  TREATMENT OF MISCELLANEOUS ITEMS

### A.  Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction of this case pursuant to the provisions of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Bankruptcy Code § 1142(a)-(b). If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if Debtor or

the Reorganized Debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**B.** **Contested Claims**

Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan may be filed by the Reorganized Debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims, the Disbursing Agent will hold in a separate interest-bearing reserve account such funds as would be necessary to make the required distribution on the Claim, as listed either in Debtor's Schedules or the filed Proof(s) of Claim. If and when a disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Disbursing Agent will pay the allowed claim in accordance with the Plan.

**C.** **Notices Under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by U.S. mail, postage prepaid by the Debtor to the address identified in a party's Proof of Claim filed in this case or the address identified in a party's Notice of Appearance filed with this Court, and if notices, requests or demands are sent to the Debtor or Debtor's counsel they should be sent to:

WCCM Group, LLC
PO BOX 91115
Phoenix, AZ 85066

and

Katherine Anderson Law PLLC
7508 N. 59th Ave
Glendale, AZ 85301

# VIII. EFFECT OF CONFIRMATION OF PLAN

## A. Discharge

Pursuant to Bankruptcy Code § 1191(a) and § 1141(d), confirmation of the Plan discharges the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of this title. Notwithstanding the other terms of this paragraph, non-dischargeable debts under Bankruptcy Code § 523 will not be discharged.

Pursuant to Bankruptcy Code § 1192, if the Plan is confirmed under Bankruptcy Code § 1191(b) of this title, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A) of this title, and all other debts allowed under § 503 of this title and provided for in the Plan, except any debt on which the last payment is due after the sixty (60) month term of the Plan, or of the kind specified in Bankruptcy Code § 523(a) of this title.

If Confirmation of this Plan does not occur, the Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims against Debtor or the estate or any other Persons, or to prejudice in any manner the rights of Debtor or the estate or any Person in any further proceeding involving the Debtor or the estate. The provisions of this Plan shall be binding upon Debtor and all Creditors, regardless of whether such Claims are Impaired or whether such parties accept this Plan, upon Confirmation thereof.

## B. Revesting

Except as provided in Section VI(C) below, the confirmation of the Plan revests all of the property of the estate in the Debtor. The Debtor shall continue to manage its affairs without supervision of the Bankruptcy Court. In addition, the Debtor may enter into such agreements, transfer, convey, encumber, use and lease the assets as the Debtor deems appropriate under the circumstances without the requirement of seeking approval

from the Bankruptcy Court.  Nothing in this provision shall impair liens and encumbrances which a holder has retained pursuant to the express terms of the Plan.

### C.  Termination of Subchapter V Trustee Service

Pursuant to Bankruptcy Code § 1183(c)(1), if the Plan is confirmed under Bankruptcy Code § 1191(a) of this title the service of the Trustee in the case shall terminate when the plan has been substantially consummated, except that the United States Trustee may reappoint a trustee as needed for performance of duties under subsection (b)(3)(C) of this section and § 1185(a) of this title.  Not later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file with the court and serve on the Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation.

If the Plan is confirmed under Bankruptcy Code §1191(b) of this title, the Trustee will request the court to terminate the Trustee's service upon Debtor's completion of the payments specified in this Plan.

### D.  Modification of the Plan

Pursuant to Bankruptcy Code § 1193(b) the Debtor may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan but may not modify the Plan so that the Plan as modified fails to meet the requirements of §§ 1122 and 1123 of this title, with the exception of subsection (a)(8) of such § 1123. The Plan, as modified under this subsection, becomes the Plan only if circumstances warrant the modification and the court, after notice and a hearing, confirms the Plan as modified under § 1191(a) of this title.

### E.  Default in Plan Payments

In the event Debtor fails to make plan payments in accordance with this Plan, a creditor, the U.S. Trustee, or Subchapter V Trustee may bring a motion to convert this case to a Chapter 7 or dismiss the case under Bankruptcy Code § 1112(b). If the Bankruptcy Court orders the case converted to Chapter 7, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan,

21

will revest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this case.

If the Plan is confirmed pursuant to Bankruptcy Code § 1191(a) and Debtor defaults on Plan payments their bankruptcy discharge will be revoked. The automatic stay provisions of Bankruptcy Code § 362, the discharge injunction of Bankruptcy Code § 524, and the terms and conditions of the Plan shall no longer apply to the Debtor or Creditors listed herein.

### F. Post-Confirmation Conversion or Dismissal

If a creditor or party in interest believes such other cause exists than described above, they may bring a motion to convert or dismiss the case under Bankruptcy Code § 1112(b). If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this case.

### G. Closing of the Bankruptcy Case

Until the Case is closed, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee. As soon as (1) the Plan has been substantially consummated under a consensual Plan, the Debtor will file and serve a Notice of Substantial Consummation and commence Plan payments; and (2) Final Orders have been entered allowing or disallowing Disputed Claims and resolving any adversary proceedings, the Reorganized Debtor shall request entry of a final decree if the Plan was consensual confirmation, and order closing the bankruptcy case, subject to reopening upon motion, for cause, by the Reorganized Debtor or any party in interest. In the event the Plan was confirmed pursuant to § 1191(b) (nonconsensual confirmation), the case will remain open until the last plan payment has been made.

**H.**     <u>**Governing Law**</u>

Except to the extent governed by the Bankruptcy Code or Rules, the Debtor's Plan shall be governed by and construed in accordance with Arizona law, without regard to its conflict of law principles. To the extent that application of Arizona law would frustrate the purposes of the Debtor's Plan, federal common law shall be applied.

RESPECTFULLY SUBMITTED this 10th day of December, 2024.

KATHERINE ANDERSON LAW PLLC

By: */s/ Katherine E. Anderson*
      Katherine E. Anderson
      7508 N. 59th Avenue
      Glendale, AZ 85301
      *Attorneys for WCCM Group, LLC*

# EXHIBIT 1

| WCCM Group Plan Projections | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | March | April | May | June | July | August | September | October | November | December | 2026 | 2027 | 2028 | 2029 |
| Vegas rent | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 5,959.00 | $ 71,508.00 | $ 72,108.00 | $ 72,708.00 | $ 73,308.00 |
| Carter Rent | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 27,600.00 | $ 28,200.00 | $ 28,800.00 | $ 29,400.00 |
| Milada Rent | $ 3,200.00 | $ 3,200.00 | $ 3,200.00 | $ 3,200.00 | $ 3,200.00 | $ 3,200.00 | $ 3,200.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Minton Rent | $ 1,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 19th Street Rent | $ 1,995.00 | $ 1,995.00 | $ 1,995.00 | $ 1,995.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Sale of 19th Street | | | | | $ 373,520.00 | | | | | | | | | |
| Sale of Minton | | | | | | | $ 377,200.00 | | | | | | | |
| Sale of Milada | | | | | | | | $ 375,360.00 | | | | | | |
| Total Income | $ 14,954.00 | $ 15,954.00 | $ 15,954.00 | $ 15,954.00 | $ 387,479.00 | $ 13,959.00 | $ 388,659.00 | $ 383,619.00 | $ 8,259.00 | $ 8,259.00 | $ 99,108.00 | $ 100,308.00 | $ 101,508.00 | $ 102,708.00 |
| Secured Debt – AZ Properties (includes tax and insurance) | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 54,000.00 | $ 54,000.00 | $ 54,000.00 | $ 54,000.00 |
| Additional Payment from Sale | | | | | $ 325,000.00 | | $ 325,000.00 | $ 325,000.00 | | | | | | |
| Secured Debt – NV Property (includes tax and insurance) | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 3,585.22 | $ 43,022.64 | $ 43,022.64 | $ 43,022.64 | $ 43,022.64 |
| Vehicle Repairs/Maintenance | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| Vehicle Insurance | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 231.00 | $ 2,772.00 | $ 2,772.00 | $ 2,772.00 | $ 2,772.00 |
| BMW Monthly Payment | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 881.42 | $ 10,577.04 | $ 10,577.04 | $ 10,577.04 | $ 10,577.04 |
| Minton HOA Cure | $ 91.22 | $ 91.22 | $ 91.22 | $ 91.22 | $ 91.22 | $ 91.22 | $ 4,925.68 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 19th Street HOA Cure | $ 23.95 | $ 23.95 | $ 23.95 | $ 23.95 | $ 1,340.99 | | | | | | | | | |
| Carter Road HOA Cure | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 25.45 | $ 305.40 | $ 305.40 | $ 305.40 | $ 305.40 |
| General Unsecured Class | $ - | $ - | $ - | $ - | $ 11,282.96 | $ - | $ 11,282.96 | $ 11,282.96 | $ - | $ - | $ - | $ - | $ - | $ - |
| Vegas Expenses (see 1-A) | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 | $ 929.00 |
| Carter Expenses (see 1-D) | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 | $ 225.00 |
| Milada Expenses (see 1-B) | $ 1,075.00 | $ 1,075.00 | $ 1,075.00 | $ 1,075.00 | $ 1,075.00 | $ 1,075.00 | $ 1,075.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Minton Expenses (see 1-C) | $ 925.00 | $ 925.00 | $ 925.00 | $ 925.00 | $ 925.00 | $ 925.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 19th Street Expenses (see 1-E) | $ 270.00 | $ 270.00 | $ 270.00 | $ 270.00 | $ 270.00 | | | | | | | | | |
| Expenses | $ 12,862.26 | $ 12,862.26 | $ 12,862.26 | $ 12,862.26 | $ 350,462.26 | $ 12,568.31 | $ 352,760.73 | $ 346,760.05 | $ 10,477.09 | $ 10,477.09 | $ 113,031.08 | $ 113,031.08 | $ 113,031.08 | $ 113,031.08 |
| Net | $ 2,091.74 | $ 3,091.74 | $ 3,091.74 | $ 3,091.74 | $ 37,016.74 | $ 1,390.69 | $ 35,898.27 | $ 36,858.95 | $ (2,218.09) | $ (2,218.09) | $ (13,923.08) | $ (12,723.08) | $ (11,523.08) | $ (10,323.08) |
| Running Balance | | $ 5,183.48 | $ 6,183.48 | $ 6,183.48 | $ 40,108.48 | $ 38,407.43 | $ 37,288.96 | $ 72,757.22 | $ 70,539.13 | $ 68,321.04 | $ 54,397.96 | $ 41,674.88 | $ 30,151.80 | $ 19,828.72 |

# EXHIBIT 1-A

| VEGAS BUDGET | | |
|---|---|---|
| **Income** | **Monthly Amt** | |
| Income | $5,959.00 | |
| **Expenses** | **Amount** | |
| Property Repairs/Maintenance | $205.00 | |
| Water | $84.00 | |
| Landscaping | $640.00 | |
| **Total Expenses:** | | **$929.00** |
| **Plan Payments** | | |
| | | |
| | | |
| **Total monthly expenses including plan payments:** | | **$929.00** |
| | | **$5,030.00** |

# EXHIBIT 1-B

| CARTER BUDGET | | |
|---|---|---|
| **Income** | **Monthly Amt** | |
| Income | $2,300.00 | |
| **Expenses** | **Amount** | |
| Property Repairs/Maintenance | $150.00 | |
| Electricity | $0.00 | |
| Water | $0.00 | |
| Trash | $0.00 | |
| Internet/Phone | $0.00 | |
| Salaries | $0.00 | |
| HOA | $75.00 | |
| **Total Expenses:** | | **$225.00** |
| **Plan Payments** | | |
| **Total Plan Payments:** | | |
| **Total monthly expenses including plan payments:** | | |
| | | **$2,075.00** |

# EXHIBIT 1-C

| MILADA BUDGET | | |
|---|---|---|
| **Income** | **Monthly Amt** | |
| Income | $3,200.00 | |
| **Expenses** | **Amount** | |
| Property Repairs/Maintenance | $150.00 | |
| Electricity | $385.00 | |
| Water | $85.00 | |
| Internet/Phone | $85.00 | |
| Supplies | $65.00 | |
| Salaries | $240.00 | |
| HOA | $65.00 | |
| **Total Expenses:** | | **$1,075.00** |
| **Plan Payments** | | |
| **Total Plan Payments:** | | |
| **Total monthly expenses including plan payments:** | | **$2,125.00** |

# EXHIBIT 1-D

| MINTON BUDGET | | |
|---|---|---|
| **Income** | **Monthly Amt** | |
| Income | $1,500.00 | |
| **Expenses** | **Amount** | |
| Property Repairs/Maintenance | $150.00 | |
| Electricity | $350.00 | |
| Water | $85.00 | |
| Internet/Phone | $85.00 | |
| Salaries | $80.00 | |
| HOA | $175.00 | |
| **Total Expenses:** | | **$925.00** |
| **Plan Payments** | | |
| **Total Plan Payments:** | | |
| **Total monthly expenses including plan payments:** | | |
| | | **$575.00** |

# EXHIBIT 1-E

| 19th STREET BUDGET | | |
|---|---|---|
| **Income** | **Monthly Amt** | |
| Income | $1,995.00 | |
| **Expenses** | **Amount** | |
| Property Repairs/Maintenance | $70.00 | |
| HOA | $200.00 | |
| **Total Expenses:** | | **$270.00** |
| **Plan Payments** | | |
| **Total Plan Payments:** | | |
| **Total monthly expenses including plan payments:** | | |
| | | **$1,725.00** |

# EXHIBIT 2

| Liquidation Analysis | | | | |
|---|---|---|---|---|
| Property | Value | Liens | Est. liquidation Cost | Liquidation Value |
| 7345 W. Wigwam Avenue, Las Vegas, NV | $1,100,000.00 | $666,611.72 | $110,000.00 | $323,388.28 |
| 2329 W. Carter Road, Phoenix, AZ 85041 | $460,000.00 | $282,292.52 | $46,000.00 | $131,707.48 |
| 218 E. Milada Drive, Phoenix, AZ 85042 | $408,000.00 | $281,630.52 | $40,800.00 | $85,569.48 |
| 1728 W. Minton Street, Phoenix, AZ 85041 | $410,000.00 | $286,238.52 | $41,000.00 | $82,761.48 |
| 7437 S. 19th Street, Phoenix, AZ 85042 | $406,000.00 | $280,765.52 | $40,600.00 | $84,634.48 |
| 2022 BMW | $28,578.00 | $31,000.00 | $2,857.80 | $0.00 |
| 2020 Chevrolet Silverado | $31,696.00 | $33,256.30 | $3,169.60 | $0.00 |
| Rent Security Deposits | $7,090.00 | $0.00 | $0.00 | $0.00 |
| Bank accounts | $1,976.59 | $0.00 | $0.00 | $1,976.59 |
| Utilities security deposits | $750.00 | $0.00 | $75.00 | $675.00 |
| Supplies | $50.00 | $0.00 | $0.00 | $50.00 |
| Household goods & furnishings | $5,000.00 | $0.00 | $500.00 | $4,500.00 |
| Household electronics | $1,000.00 | $0.00 | $100.00 | $900.00 |
| | | | | |
| | | | Total unencumbered equity: | $715,262.79 |